UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CARL McKINNEY,

    Debtor.

_____/

CARL McKINNEY,

              Plaintiff,

vs.

JP MORGAN CHASE BANK,

              Defendant.

_____/

Case No. 13-40987

Chapter 13

Judge Thomas J. Tucker

Adv. Pro. No. 13-4266

**TRIAL OPINION**

**I. Introduction**

In this adversary proceeding, Plaintiff Carl McKinney ("Plaintiff"), who is the Debtor in a pending Chapter 13 bankruptcy case, seeks a judgment determining that in his proposed Chapter 13 plan, he may treat as a wholly unsecured claim the claim of the Defendant JP Morgan Chase Bank ("Defendant"). Defendant's claim against Plaintiff is secured by a second mortgage on Plaintiff's home, located at 5303 Boomerang Circle, Newport, Michigan (the "Property"). Plaintiff alleges that as of the bankruptcy petition date, the value of the Property was less than the balance owing on the first mortgage on the Property. Defendant disputes this.

The Court held a bench trial on July 23, 2013, then took this adversary proceeding under advisement. The Court has considered all of the arguments and evidence presented by the

parties. This opinion states the Court's findings of fact and conclusions of law.

For the reasons stated in this opinion, the Court finds for the Defendant, and will enter a judgment in Defendant's favor.

## II. Background

Most of the facts are undisputed. To begin with, the parties have stipulated to the following facts, as stated in the Final Pretrial Order, filed July 8, 2013:

a. Plaintiff's principal residence is located at 5303 Boomerang Cir., Newport, MI 48166.

b. Federal National Mortgage Association holds the first priority mortgage on Plaintiff's personal residence, and at the time of filing, the balance owing on the loan was $197,946.26.

c. Defendant holds the second priority mortgage on Plaintiff's personal residence, and at the time of filing of the bankruptcy case, the balance owing on the loan secured by the mortgage was $31,681.92.[1]

In Plaintiff's amended Chapter 13 plan, filed on April 26, 2013, Plaintiff proposes to treat Defendant's claim as a wholly unsecured claim.[2] The Plan thus proposes to treat Defendant's claim as all other general unsecured claims, in Class Nine, by paying a minimum dividend of 0% of the allowed claim, with no interest, over the life of the Plaintiff's 60-month Plan.[3]

As the issue has been framed by the parties, Plaintiff had the burden at trial of proving, by a preponderance of the evidence, that the value of the Property as of the January 18, 2013

---

[1] Final Pretrial Order (Docket # 16) at 2-3, ¶ 4.

[2] *See* Amended Chapter 13 Plan (Docket # 53 in Case No. 13-40987, the "Plan") at 3 § III.C.

[3] *See id.* at 5-6, § III.I (under "Class Nine"), which states that "General Unsecured Claims" will be paid the "Unsecured Base Amount," which is defined as $0 in this case, *see id.* at Attachment I, or that the Plan:
> will continue for the full Plan Length . . ., which ever yields the greater payment to Class 9 Unsecured Creditors.

petition date was equal to or less than the balance owing on the first mortgage debt (held by Federal National Mortgage Association) as of the petition date, which as the parties have stipulated, was $197,946.26. *See generally* 11 U.S.C. §§ 506(a)(1) and 506(d); *Lane v. Western Interstate Bancorp*, 280 F.3d 663 (6th Cir. 2002). If Plaintiff met that burden at trial, he must prevail in this adversary proceeding. If Plaintiff did not meet that burden, then Defendant must prevail.

### III. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(K), 157(b)(2)(L), and 157(b)(2)(O).[4]

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code § 506. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

### IV. Discussion

The Court begins by noting that in the absence of any recent, actual arms-length sale of

---

[4] The parties have agreed that this Court has subject matter jurisdiction, and that this is a core proceeding. *See* Final Pretrial Order at 1.

the Property, determining the value of the Property is not something that can be done with any sort of scientific precision or certainty. It necessarily involves some uncertainty. But the Plaintiff need not prove the value of the Property with certainty, or beyond a reasonable doubt. He merely needs to prove it by a preponderance of the evidence.

The Court has considered all of the arguments and evidence presented at trial. The trial evidence consisted of Plaintiff's Exhibits 1 and 2; Defendant's Exhibits A through C;[5] and the testimony of two witnesses: Plaintiff himself, and Defendant's appraiser, Sheri L. Mykolaitis. Plaintiff's appraiser, Chris Jaciuk, failed to appear for trial, and Plaintiff proceeded to trial without his testimony. The Court has considered Mr. Jaciuk's written appraisal report, however, as discussed below.

Based on the evidence presented, the Court finds and concludes that Plaintiff has not met his burden of proof, and that as of the January 18, 2013 petition date, the value of the Property was more than $197,946.26 (and therefore more than the balance owing on the first mortgage). The Court further finds and concludes that the value of the Property as of the petition date was $210,000.00.

In making its findings and conclusions about the value of the Property, the Court relies heavily on its review of the testimony of the Defendant's appraiser, Ms. Mykolaitis, and the detailed appraisal reports of each party's appraiser (Plaintiff's Exhibit 1 and Defendant's Exhibit B).[6] Each appraiser used the same basic method for appraising the Property — each used the

---

[5] Sometimes in this opinion, the Court will cite the exhibits using this format: "PX-_" for a Plaintiff's exhibit; and "DX-__" for a Defendant's exhibit.

[6] Plaintiff Carl McKinney also testified to some extent regarding value. He testified that he purchased the Property about 8 years ago for "around" $218,000, and that he was the first owner of the

4

sales comparison approach.[7] Plaintiff's appraiser Mr. Jaciuk opined in his report that the value of the Property was $180,000.00 as of April 4, 2013, the effective date of his appraisal. Defendant's appraiser Ms. Mykolaitis opined that the value of the Property was $210,000.00 as of May 30, 2013 (the date of her appraisal) and also as of the petition date.

To support their opinions, each appraiser presented detailed information in his/her report about several sales that occurred during 2012 and 2013, of comparable other properties in the vicinity of the subject Property. As to each such comparable sale, each appraiser took the sale price of the property and made upward and downward adjustments to the sale price, to account for differences between the comparable property and Property at issue in this case. For each comparable, that exercise yielded an adjusted sale price, which then was considered in determining the value of the subject Property.

---

home. He also testified that the home is in good shape and needs no major repairs. He further testified that he reviewed his appraiser's report, PX-1, and believes it is a fair assessment of the Property's value. Finally, Plaintiff testified regarding the listing prices of two other homes in his neighborhood that he feels are similar to his Property.

The Court gives little weight to Plaintiff's testimony regarding value, because Plaintiff did not prove that he has any expertise in valuing residential properties, and because his testimony was rather vague. The Court gives far more weight to the evidence from the appraisers, discussed in this opinion below.

[7] Each expert's appraisal report also discusses, briefly, value based on a "cost approach," *see* PX-1, fifth page; DX-B, seventh page, and Ms. Mykolaitis briefly mentioned the cost approach in her testimony. But neither Ms. Mykolaitis nor any other witness presented any evidence describing this valuation method in any detail, or tending to show that it is a reliable method of valuation of the Property in this case. Nor do the appraisal reports show this. Rather, Ms. Mykolaitis's report states that she considers the cost approach "to be less reliable than the market approach." DX-B, ninth page. For these reasons, the Court gives the meager evidence regarding the cost approach no weight in determining the value of the Property in this case.

Similarly, the Court gives no weight to the Property's "State Equalized Value," *see* PX-2. The evidence at trial did not demonstrate that this source is a reliable indicator of the value of the Property at issue.

The following table lists the sale price and adjusted sale price, and limited other information, for each comparable sale used by the appraisers in this case.[8] There were two comparable sales that were used by both of the appraisers, as indicated in the table below.

| Chris Jaciuk (did not testify) **Plaintiff's Appraiser (PX-1)** opinion of value: $180,000 Comps: | | Sheri L. Mykolaitis **Defendant's Appraiser (DX-B)** opinion of value: $210,000 Comps: | |
|---|---|---|---|
| Sale 2 5350 Bommerang Cir Newport, MI | | Sale 1 5405 Spitfire Newport, MI | |
| sale price | $178,000 | sale price | $197,600 |
| date of sale | 8/8/12 | date of sale | 4/11/13 |
| adjusted sale price | **$171,500** | adjusted sale price | **$204,100** |
| Sale 4 4420 Patridge Ln Newport, MI | | Sale 2 4085 Bayview Circle Newport, MI | |
| sale price | $159,000 | sale price | $217,000 |
| date of sale | 1/16/13 | date of sale | 11/19/12 |
| adjusted sale price | **$174,400** | adjusted sale price | **$208,500** |
| | | Sale 3 4511 Burke Rd Newport, MI | |
| | | sale price | $223,000 |
| | | date of sale | 5/17/13 |
| | | adjusted sale price | **$219,000** |
| Sale 3 (same property as Mykolaitis's Sale 4) 5448 Marshall Field Newport, MI | | Sale 4 (same property as Jaciuk's Sale 3) 5448 Marshall Field Newport, MI | |
| sale price | $185,000 | sale price | $185,000 |
| date of sale | 12/26/12 | date of sale | 11/11/12 |
| adjusted sale price | **$179,000** | adjusted sale price | **$204,500** |

---

[8] This table does not list the one comparable property in Ms. Mykolaitis's report that was merely an active listing, rather than an actual sale – the property at 5417 Marshall Field Drive, Newport, Michigan. The Court has disregarded the evidence about that property, because it merely involves an owner's asking price, rather than an actual sale of a property.

In addition, the table above does not list all of the specific adjustments or other information in the appraisal reports about these comparable sales/properties, although the Court considered all such information in making its decision.

6

|  |  |  |  |
|---|---|---|---|
| Sale 1 (same property as Mykolaitis's Sale 5) 5522 Spitfire Ct Newport, MI | | Sale 5 (same property as Jaciuk's Sale 1) 5522 Spitfire Ct Newport, MI | |
| sale price | $234,900 | sale price | $234,900 |
| date of sale | 11/30/12 | date of sale | 11/29/12 |
| adjusted sale price | **$208,900** | adjusted sale price | **$220,900** |
| | | Sale 6 4300 Bay West Dr. Newport, MI | |
| | | sale price | $229,000 |
| | | date of sale | 02/25/13 |
| | | adjusted sale price | **$224,500** |

In considering these comparable sales, the Court notes the following. Of the six comparable sales used by Defendant's appraiser Ms. Mykolaitis, her adjusted sale prices range from $204,100 to $224,500, and the average of these six adjusted sale prices is $213,583. All of these sales are close in time to the January 18, 2013 petition date; the sale dates range from November 11, 2012 at the earliest to May 17, 2013 at the latest, a date range that is from about two months before the petition date to about four months after the petition date. As Ms. Mykolaitis's testimony and report showed, all six of these comparable sale properties are located very close to the subject Property. Their locations range from .17 miles away (Sale 4) to .93 miles away (Sale 3) from the subject Property. And Ms. Mykolaitis testified that three of her six comparable sale properties are actually located in the same subdivision as the subject Property (Sales 1, 4, and 5).

Of the two comparable sale properties that were used by both appraisers, (Ms. Mykolaitis's Sales 4 and 5), Plaintiff's appraiser Mr. Jaciuk in his report made different adjustments than Ms. Mykolaitis, to arrive at lower adjusted sale prices. But no evidence was

7

presented at trial or in Mr. Jaciuk's report to show or explain why Jaciuk's adjustments were correct and Mykolaitis's adjustments were not. No evidence was presented explaining why there was anything wrong or inappropriate in the adjustments, and adjusted sale prices, arrived at by Ms. Mykolaitis.[9] Because Plaintiff bears the burden of proof in this case on the issue of value, Plaintiff's failure to present any such evidence against Ms. Mykolaitis's adjustments is an important lack of proof by Plaintiff. And of the two comparable sales common to both appraisers, even Mr. Jaciuk calculated an adjusted sale price for one of them (Jaciuk's Sale 5) of $208,900. This value is substantially higher than the $197,946 balance owing on the first mortgage on Plaintiff's Property.

The Court finds, based on Ms. Mykolaitis's report and on her testimony, that the six comparable sale properties used by Ms. Mykolaitis in her appraisal are indeed comparable to the subject Property, and that the adjustments Ms. Mykolaitis made to arrive at her adjusted sale prices for these six properties were appropriate and warranted, so that her adjusted sale prices are also appropriate and warranted.

Even if the Court accepts all of Mr. Jaciuk's adjusted sale prices for the four comparable sales he used, including for the two properties that were also used by Ms. Mykolaitis, the evidence still weighs against Plaintiff's claimed value for the subject Property. Thus, assume for the sake of discussion that the Court gives Plaintiff the benefit of Jaciuk's lower adjusted sale prices for the two properties that both he and Ms. Mykolaitis used, rather than Ms. Mykolaitis's higher adjusted sale prices for these two properties. Using Jaciuk's four adjusted sale prices, and also

---

[9] As noted above, Mr. Jaciuk did not testify at trial, so the Court did not have the benefit of his testimony. But the Court has considered his written report, PX-1.

using the adjusted sale prices used by Ms. Mykolaitis for the four properties that she used but Jaciuk did not use, the average adjusted sale price for those eight comparable sales is $198,737.50.[10] That value still exceeds the $197,946 balance owing on the first mortgage on Plaintiff's Property.

It is fair to point out that three of the four comparable sales used by Plaintiff's appraiser Mr. Jaciuk, standing alone, do tend to support a value of about $180,000 for the Plaintiff's Property. But the fourth comparable sale used by Mr. Jaciuk (his Sale 1) tends to show a much higher value — approximately $209,000. When this evidence is considered with Ms. Mykolaitis's adjusted sale prices for the sales of the six comparable properties she used, overall the evidence weighs strongly against a value for Plaintiff's Property as low as $197,946. In other words, Plaintiff has failed to meet his burden of proving, by a *preponderance of the evidence*, that the value of his Property is less than or equal to the $197,946 balance owing on the first mortgage. Rather, the *preponderance* of the evidence is that the value of Plaintiff's Property is substantially more than $197,946.

Based on the evidence presented at trial, the Court finds that the value of the Plaintiff's Property as of the petition date was $210,000, as Defendant's appraiser Ms. Mykolaitis opined. This, of course, is substantially more than the $197,946 balance that Plaintiff owed on his first mortgage loan as of the petition date.

---

[10] The calculation is this: First, the Court adds (1) the total of the four adjusted sale prices in Jaciuk's appraisal report (Jaciuk's Sales 1-4 in the chart above), which equals $733,800; plus (2) the total of the four adjusted sale prices in Mykolaitis's report for the other properties, used only by Mykolaitis, (Mykolaitis Sales 1, 2, 3, and 6 in the chart above), which equals $856,100. Second, the Court takes the total of (1) and (2), which equals $1,589,900, and divides that by 8, which equals $198,737.50.

9

## V. Conclusion

Based on the findings of fact, conclusions of law, and the reasons stated in this opinion, the Court will enter judgment for Defendant. Plaintiff has failed to met his burden of proof.

The Court will prepare and enter an appropriate judgment, by separate document.

**Signed on July 26, 2013**                                  **/s/ Thomas J. Tucker**
                                                             **Thomas J. Tucker**
                                                             **United States Bankruptcy Judge**